## STATE v. SOCIETY FOR ESTABLISHING USEFUL MANU-FACTURES, &c.

1. When, at the time lands are dedicated and accepted for public use as a highway, there existed upon adjoining land an excavation which, when the highway became frequented, was dangerous to those carefully passing along the same, no duty to guard or protect the excavation is cast upon the owner of such adjoining land, for the neglect of which he can be indicted.

2. The public thus accepting a highway takes the land in the situation and circumstances then existing, and with the burden of adapting it to safe public travel cast upon the public authorities and not upon the adjoining land-owner.

An indictment in the Passaic Oyer and Terminer charged defendant with having maintained a raceway along and adjoining public streets in Paterson, without such guards as were proper to prevent persons passing upon such streets from falling therein, and averred it was defendant's duty to maintain such guards. The indictment was removed to the Supreme Court by *certiorari*, and a motion to quash was made on two grounds: 1st. That no such duty devolved on a land-owner with respect to land lying without the public highway, and therefore no wrong to the public had been charged; and 2d. That such duty, if imposed, related only to excavations made after the highway was created, and therefore the indictment should have averred that the highway pre-existed the raceway.

The opinion of the court denying the motion is reported in *State* v. *Society, &c.*, 13 *Vroom* 504.

Upon the first ground it was held that an excavation so

near a public highway that persons, lawfully and with ordinary care, using the way might by accident fall into it, is, *per se*, a nuisance unless proper means to prevent such accidents are adopted.

Upon the second objection it was held that an averment of the pre-existence of the highway was not necessary in the indictment, which sufficiently charged the breach of a public duty, but that if the highway became such after the raceway existed, and if that fact relieved defendant from the duty, it was a defence to the charge, which might be shown by defendant and need not be denied by the prosecutor in advance. Whether that fact would relieve defendant from the duty and afford a defence to the indictment was left undetermined.

Upon the trial in the Passaic Circuit, it was assumed by the court and conceded by counsel that the streets named in the indictment had become such by dedication. There was competent evidence thereof. Defendant relied in part on that defence, claiming that on a dedication of land for a highway, the public in accepting took the land *cum onere*, and that no duty was imposed on the adjoining land-owner, although his land was so situated as to be hazardous to persons passing on the highway. The Circuit judge overruled this defence, and left the case to the jury upon the question whether defendant had maintained proper safeguards against accidents along the raceway.

Defendant was found guilty, and a rule to show cause why a new trial should not be granted was allowed.

Argued at June Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and PARKER.

For the defendant, *J. D. Bedle.*

For the state, *E. Stevenson.*

MAGIE, J. One of the reasons assigned in support of this rule is, that the court overruled on the trial a lawful and sub-

stantial defence, viz., that the public streets named in the indictment became such by dedication after the raceway complained of was in existence.

It was urged on the argument that the question thus presented ought not to be considered, because it is claimed that it does not appear that the public streets had been accepted by the public so as to charge the public authorities with their control or repair, or with any duty respecting them.

The language used by the court below in overruling the defence renders it apparent that these streets were considered and treated as both dedicated to and accepted by the public. If long user by the public is evidence of such acceptance, there was such evidence in the case. A user by the public at least of for twenty years, has frequently been held to be evidence of the acceptance of a dedication. *Washb. on Easements* 197; *Angell on Highways*, § 162; *Trustees, &c.*, v. *Hoboken*, 4 *Vroom* 13; *Attorney-General* v. *M. & E. R. R. Co.*, 4 *C. E. Green* 386, 391. In the nature of things, such evidence is generally all the evidence attainable of an acceptance. But besides, in this case, the indictment expressly charges these to be public streets, and thus recognizes that the dedication proved had in fact been accepted. The judge below therefore properly treated them as streets accepted by the public, and they must be so considered here.

The question before us, then, is whether, when land lying along an excavation is dedicated to and accepted for public use as a highway, the owner of the land wherein the excavation is has thereby imposed upon him a duty to the public to provide guards against the resulting danger, for the violation of which duty he may be indicted. If this question must be answered in the affiamative, the defence was properly overruled, otherwise defendant ought to have been entitled to rely on it.

In my judgment, the same question would arise if the depression complained of was not an artificial excavation but the result of natural causes, as a ravine or river-bed. For the duty of the land-owner, if any, arises not from the making

but from the maintenance of the unguarded depression in dangerous proximity to a public road. The natural depression is as much maintained by the owner as the artificial one. He equally owns, possesses and controls both, and a similar duty must thus result.

Nor is the question varied, in my judgment, by the fact appearing in the case, that the streets mentioned are on defendant's land, and were dedicated by defendant. Precisely the same question would arise if the land had been owned and dedicated by another, along this dangerous excavation. For the duty arises, not from any contract in the dedication, but, if at all, from the proximity of the excavation to the public way. It would therefore be equally imposed on him who had no agency in creating the way, and on him who had devoted it to public use.

Nor do I conceive that any useful analogy can be traced between the case on hand and those cases in which damages are sought for private injuries produced by nuisances. In cases involving nuisances caused by works disseminating foul and noxious gases and vapors, it has been held that it is no answer to the action to say that plaintiff acquired the property in respect of which he is injured, after the works were in operation, or even in anticipation of the erection. *Bliss* v. *Hall*, 4 *Bing. N. C.* 183; *Tipping* v. *St. Helen's Smelting Co.*, 4 *B. & S.* 608, 616; *S. C.*, 11 *H. L. Cas.* 642. But in all such cases, the injury is inflicted by the active and constantly recurring operation of the works. If left unoperated, no injury would be inflicted. Purchasers might therefore well anticipate a cessation of all injurious operations, or rely on their right to enforce such cessation, unless a prescriptive right to operate had been acquired.

But in this case, the injury is not inflicted by the operation of the raceway, as was ingeniously argued. The rush of water may increase the hazard, but does not cause the public injury. That is the result of the depression of the ground immediately beside the highway. Injury would still be caused, though not, perhaps, in the same degree, if not a drop of water ran in the raceway.

The question then recurs whether, under the circumstances disclosed in ·this case, defendant is liable for a breach of a duty owed to the public, in not altering the condition in which the land adjoining these streets was at the time of dedication and acceptance, or for not guarding the public against a danger to which those passing the streets were exposed the moment the streets became public.

Dedication of land to the public may be so made as to indicate the specific public use which is intended, as for a public park or square. The use may be restricted to a particular mode of passage, if it be a way, as for a foot-path, in distinction from a way for wagons, &c. Acceptance of such a dedication would be limited to the use designed. Any use by the owner, not conflicting with the public use designed, would therefore be no obstruction of the public right. So it has been held that a dedication of a foot-path might be made subject to the owner's right to plough up the soil, in the usual course of husbandry, and that such ploughing would not be an interference with any public right. *Mercer* v. *Woodgate*, *L. R.*, 5 *Q. B.* 26.

Land dedicated and accepted for public use as a way, has universally been considered, with respect to its condition within the lines of the way, as taken by the public *cum onere*. It devolves on the public to adapt it to public use, and to guard the safety of public passage. If a natural ravine, or even an artificial excavation crosses it, or a ledge of rocks intercepts passage, no one pretends that the land-owner is to bridge the ravine, fill up the excavation or remove the ledge, or be liable for maintaining an obstruction in the highway. If the ravine or artificial excavation carry water for his use, the case is in no respect altered.

There is nothing to controvert this doctrine—which is universally recognized and adopted in practice—in the cases of *State* v. *Dean*, 3 *Zab.* 335, and *State* v. *Atlantic City*, 5 *Vroom* 99. In those cases, dedicated streets had been improved, and the expense had been imposed on the adjoining land-owners, who had in fact dedicated them. It was held that, in respect

to the expense of such improvements, the dedicating land-owner stood on the same footing as others. The city assumed the burden of making the improvement, but thereafter imposed the expense on all adjoining land-owners, in conformity to the provisions of the charter. The obligation of the public was to that extent modified by the particular law.

The charge in this indictment is of a public nuisance, in the nature of an obstruction to the streets named. The obstruction is not, indeed, within the lines of the streets, but the theory on which the indictment was supported is, that the excavation complained of is so near the highway as to be dangerous to those carefully passing thereon. Can the duty of defendant, in regard thereto, be greater than its duty in regard to an excavation within the lines of the street so dedicated? In my judgment, it cannot be. At the time the public right was acquired, the land was in the identical condition it now is. The dedication must be considered to have been made and accepted, subject thereto. If the public ought to be protected against danger therefrom, the duty is devolved, not on the defendant, but on the public authorities.

This view has been adopted in several cases in point, and no contrary decision has been cited or discovered by me.

In the two cases of *Fisher* v. *Prowse* and *Cooper* v. *Walker*, which were argued and decided together, and are reported in 2 *B. & S.* 770, Blackburn, J., in delivering the opinion of the Court of Queen's Bench, uses the following language: "But the question still remains whether an erection or excavation already existing, and not otherwise unlawful, becomes unlawful when the land on which it exists, or to which it is immediately contiguous, is dedicated to the public as a way, if the erection prevents the way from being so convenient and safe as it otherwise would be, or whether, on the contrary, the dedication must not be taken to be made to the public and accepted by them, subject to the inconvenience and risk arising from the existing state of things. We think the latter is the correct view of the law. It is, of course, not obligatory on the owner of land to dedicate the use of it as a high-

way, to the public. It is equally clear that it is not compulsory on the public to accept the use of a way when offered to them. If the use of the soil as a way is' offered by the owner to the public, under given conditions and subject to certain reservations, and the public accept the use under such circumstances, there can be no injustice in holding them to the terms on which the benefit was conferred. On the other hand, great injustice and hardship would often arise if, when a public right of way has been acquired under a given state of circumstances, the owner of the soil should be held bound to alter that state of circumstances to his own disadvantage and loss, and to make further concessions to the public, altogether beyond the scope of his original intention."

The case of Fisher *v.* Prowse was considered and approved in *Robbins* v. *Jones*, 15 *C. B.* (*N. S.*) 221, in which similar questions were presented.

In *Cornwell* v. *Metropolitan Commissioners, &c.*, 10 *Exch.* 771, it was held that public officers managing a system of sewers, were not obliged to guard an ancient ditch, used by them for sewer purposes, although lying immediately adjoining a public highway.

These cases were also approved in *Mercer* v. *Woodgate, L. R.*, 5 *Q. B.* 26; *Arnold* v. *Blaker, L. R.*, 6 *Q. B.* 433; *St. Mary's, &c.*, v. *Jacobs, L. R.*, 7 *Q. B.* 47, and *Arnold* v. *Holbrook, L. R.*, 8 *Q. B.* 96.

My conclusion therefore is, that defendant was entitled to have the evidence respecting the dedication of these streets submitted to the jury, for it afforded a defence to the indictment.

Whether the duty of guarding this raceway would have been imposed on defendant if the streets had been acquired, not by dedication, but by condemnation, is a question not directly presented, and not necessary to be determined.

For the reason above mentioned, the rule for a new trial should be made absolute.

This conclusion renders unnecessary the consideration of the other reasons urged by defendant for a new trial.

BEASLEY, CHIEF JUSTICE, and PARKER, Justice, concurred.

DIXON, J., (dissenting.) I do not assent to this decision. I think a person maintaining any artificial condition of things adjoining a highway, which makes the road unsafe for public travel, for want of reasonable precautions against danger, is guilty of maintaining a public nuisance, without regard to the time when the highway was created.